IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

RICKY GROTE,

        Plaintiff,

vs.

WRIGHT MEDICAL GROUP, INC.
and WRIGHT MEDICAL
TECHNOLOGY, INC.,

        Defendants.

12-CV-2002-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   RELEVANT PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    *Defendants' First Motion to Strike* . . . . . . . . . . . . . . . . . . . . 2
    B.    *Defendants'* **Daubert** *Motions*. . . . . . . . . . . . . . . . . . . . . . . . .3
    C.    *Defendants' Motion for Summary Judgment* . . . . . . . . . . . . . . . . . . .3
    D.    *Defendants' Motion*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

IV.   SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . .5

V.    ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    *Applicable Law*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    B.    *Parties' Arguments*. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    C.    *Application*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        1.    *Mari Truman*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
            i.    *Inadequate warning*. . . . . . . . . . . . . . . . . . . . 9
            ii.   *Alternative design*. . . . . . . . . . . . . . . . . . . . 12
        2.    *Fredrick Hetzel*. . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        3.    *Dr. B. Sonny Bal*. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI.  *CONCLUSION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

## I. INTRODUCTION

The matter before the court is Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.'s ("Defendants") "Second Motion to Strike Late Expert Disclosures" ("Motion") (docket no. 53).

## II. RELEVANT PROCEDURAL HISTORY

On January 18, 2012, Plaintiff Ricky Grote filed a Complaint (docket no. 1) against Defendants, alleging design defect (Count I), inadequate instructions or warning (Count II), breach of post-sale duty to warn (Count III), negligence (Count IV), breach of implied warranty (Count V) and manufacturing defect (Count VI). On March 26, 2012, Defendants filed an Answer (docket no. 10), denying Grote's claims and asserting affirmative defenses.

### A. Defendants' First Motion to Strike

On June 13, 2013, Defendants filed their First Motion to Strike (docket no. 24). In the First Motion to Strike, Defendants asserted that the supplemental expert reports that Grote submitted as to designated experts Mari S. Truman, M.S.M.E., P.E. and Fredrik W. Hetzel, Ph.D. on the last day of discovery—June 7, 2013—would cause prejudice if the court did not exclude them or extend discovery deadlines because Defendants would not have an opportunity to respond to the supplemental expert reports. Due to this alleged prejudice, Defendants requested that the court strike Grote's experts' supplemental reports, reopen discovery and/or continue the trial. On June 21, 2013, Grote filed a Resistance to the First Motion to Strike (docket no. 29). On July 29, 2013, the court held a hearing and heard oral argument on, among other things, the First Motion to Strike. *See* Amended Minute Entry (docket no. 54-1). At the hearing, the court denied the First Motion to Strike.

### B. Defendants' Daubert Motions

On June 24, 2013, Defendants filed a Motion to Exclude the Expert Opinion Testimony of Dr. B. Sonny Bal ("Motion to Exclude Dr. Bal") (docket no. 32), a Motion to Exclude Truman (docket no. 33) and a Motion to Exclude Hetzel (docket no. 34) (collectively, "*Daubert* Motions").

On July 18, 2013, Grote filed a Resistance to the Motion to Exclude Dr. Bal (docket no. 43), a Resistance to the Motion to Exclude Truman (docket no. 44) and a Resistance to the Motion to Exclude Hetzel (docket no. 45) (collectively, "*Daubert* Resistances").

On July 25, 2013, Defendants filed a Reply in Support of the Motion to Exclude Dr. Bal (docket no. 50), a Reply in Support of the Motion to Exclude Truman (docket no. 51) and a Reply in Support of the Motion to Exclude Hetzel (docket no. 52) (collectively, "*Daubert* Replies").

At the July 29, 2013 hearing, the court heard oral argument on the *Daubert* Motions and reserved ruling. *See* Amended Minute Entry.

### C. Defendants' Motion for Summary Judgment

On June 24, 2013, Defendants filed a Motion for Summary Judgment (docket no. 30). On July 19, 2013, Grote filed a Resistance to the Motion for Summary Judgment (docket no. 47). Grote also filed an Appendix in support of his Resistance to the Motion for Summary Judgment ("Grote's App'x") (docket nos. 42 and 47-3), which contained affidavits from Dr. Bal, Hetzel and Truman that Grote used to support both his Resistance to the Motion for Summary Judgment and his *Daubert* Resistances.[1] On July 30, 2013, Defendants filed a Reply in Support of the Motion for Summary Judgment (docket no. 58).

---

[1] Although the Resistance to the Motion for Summary Judgment was filed on July 19, 2013, part of Grote's App'x was filed on July 18, 2013. Therefore, Grote was able to use the affidavits contained in part of Grote's App'x to support his arguments in his *Daubert* Resistances, which were also filed on July 18, 2013.

3

### D. *Defendants' Motion*

On July 25, 2013, Defendants filed the Motion asking the court to strike the expert witnesses' affidavits included in Grote's App'x, which are referenced in Grote's Resistance to the Motion for Summary Judgment and *Daubert* Resistances. In the Motion, Defendants also ask that the court not consider the facts, opinions and qualifications included in these affidavits when ruling on the Motion for Summary Judgment and *Daubert* Motions.

At the July 29, 2013 hearing, the court did not hear arguments on the Motion because Grote had not yet had an opportunity to resist the Motion.

On August 7, 2013, Defendants filed a Supplementation to the Motion (docket no. 59). In the Supplementation to the Motion, Defendants withdraw their request that the court strike the affidavits of Grote's expert witnesses in light of the court's denial of Defendants' First Motion to Strike and the court's statements at the hearing. Instead, Defendants request to depose, in person, the three experts who provided affidavits in light of the new opinions expressed in the affidavits. On August 12, 2013, Grote filed a Resistance (docket no. 60).

### III. *FACTUAL BACKGROUND*

In August 2004, Grote had a "size AR 15 long femoral neck . . . implanted into [his] right hip . . . as part of a right hip prosthesis" and a "varus anteverted long femoral neck . . . implanted into [his] left hip . . . as part of a left hip prosthesis." Complaint ¶¶ 15, 20. In January 2011, "the femoral neck component of his right total hip prosthesis" fractured as Grote was walking to his car, which required revisionary surgery. *Id*. ¶¶ 16-17. In April 2011, Grote had prophylactic revisionary surgery on "the femoral component of his left total hip arthroplasty," which Grote claims was "necessitated by an impending stress fracture of the femoral neck of his left total hip arthroplasty." *Id*. ¶¶ 21-22.

In the Complaint, Grote asserts six claims against Defendants based on his alleged injuries due to the allegedly defective hip prosthesis that Defendants manufactured. Grote

4

claims damages for "(a) past medical expenses; (b) future medical expenses; (c) past lost wages; (d) future loss of earning capacity; (e) past loss of full mind and body; (f) future loss of full mind and body; (g) past physical and mental pain and suffering; and (h) future physical and mental pain and suffering." *Id.* ¶¶ 33, 41, 53, 59, 67 & 73.

The first events relevant to the Motion occurred on April 25 and 26, 2013. Over the course of those two days, the parties exchanged e-mails discussing discovery deadlines. *See* E-mail Exchanges (docket 24-2) at 2-3. All of this discussion occurred after Grote's expert witness rebuttal deadline, which was March 22, 2013. *See* Order Extending Deadlines (docket no. 18) at 1. On April 26, 2013, Defendants, with Grote's consent, requested that the court extend the discovery and dispositive motions deadlines. Motion for Extension of Deadlines (docket no. 22) at 3. The Motion for Extension of Deadlines also stated that "[n]either side currently anticipates taking retained liability expert witness depositions." *Id.* The court granted the Motion for Extension of Deadlines on April 29, 2013. April 29, 2013 Order (docket no. 23).

The parties contested no discovery issue until June 7, 2013—the last day of discovery. On that day, Grote sent Defendants supplemental expert reports prepared by two of Grote's experts: Truman (docket no. 24-3) and Hetzel (docket no. 24-4). Later, on July 18, 2013, Grote filed Grote's App'x. In Grote's App'x, Grote included affidavits from three of Grote's experts: Dr. B. Sonny Bal, Truman and Hetzel. Grote relied on these affidavits to various degrees in his Resistance to the Motion for Summary Judgment and *Daubert* Resistances.

## IV. SUBJECT MATTER JURISDICTION

Grote is a resident of Waterloo, Iowa, which is in Black Hawk County. Both Defendants are corporations incorporated in Delaware. Wright Medical Technology, Inc. has its principal place of business in Arlington, Tennessee. Wright Medical Group, Inc.

admits that its principal place is in a state other than Iowa. The amount in controversy exceeds $75,000.

The court has diversity jurisdiction over this case because complete diversity exists among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States . . . .").

### V. ANALYSIS

#### A. *Applicable Law*

Federal Rule of Civil Procedure 26(a)(2)(B) governs a party's required disclosure of expert testimony and provides that a party's expert report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

If the disclosing party "learns that in some material respect the disclosure or response is incomplete . . . , and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process," the disclosing party "must supplement or correct its disclosure or response." Fed. R. Civ. P.

6

26(e)(1). Any changes to an expert's report must "be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2).

Pursuant to Federal Rule of Civil Procedure 37(c)(1):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless. In addition to *or instead of* this sanction, the court, on motion and after giving an opportunity to be heard . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure.

Fed. R. Civ. P. 37(c)(1) (emphasis added). When determining the proper remedy, the court should consider "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).

In addition to Rule 37 sanctions, a court may modify a discovery schedule for "good cause." Fed. R. Civ. P. 16(b)(4).

### B. Parties' Arguments

In their Motion and Supplementation to the Motion, Defendants argue that the court should allow Defendants to depose the expert witnesses—Dr. Bal, Truman and Hetzel—whose affidavits Grote relies on in his Resistance to the Motion for Summary Judgment and *Daubert* Resistances because the affidavits disclosed new information prejudicial to Defendants after the discovery deadline. Moreover, Defendants claim that they would have deposed these expert witnesses had Grote disclosed this information prior to the discovery deadline. Defendants claim that they initially chose not to depose Truman and Hetzel because the reports Grote issued on their behalf were "nearly identical" to reports issued in previous cases. Brief in Support of Motion (docket no. 53-1) at 2.

7

Defendants claim "the new affidavits . . . cite to new literature, provide new qualifications to offer certain opinions, and contain new opinions and explanations not previously disclosed." *Id.* at 2-3.

Specifically, Defendants argue that Truman's July 18, 2013 affidavit contains new information on her qualifications to give opinions "concerning the adequacy of [Defendants'] warnings" and new evidence on the risks and benefits of an alternative design. *Id.* at 6. Defendants also argue that Hetzel had previously failed to assess the "risks and utility of conical Morse tapers versus non-conical tapers," but Hetzel's July 18, 2013 affidavit provides this information. *Id.* Finally, Defendants argue that Dr. Bal's expert report previously did not disclose the methodology by which he reached his conclusions and did not "tie his conclusions and opinions to specific facts of this case," but the July 18, 2013 affidavit provides such information. *Id.* at 6-7.

In his Resistance, Grote argues that the affidavits at issue were timely submitted and do not qualify as "untimely discovery supplementations." Resistance at 1-2. In addition, Grote contends that Defendants have not suffered any prejudice on account of the information included in the affidavits because the "witnesses are well known to [Defendants], and [Defendants] ha[ve] ample time between now and trial to prepare to cross-examine these witnesses." *Id.* at 2. Grote also suggests that if the court allows Defendants to depose the expert witnesses that the depositions should be: (1) limited in scope to the "newly disclosed" information; and (2) conducted telephonically because the experts are in three different states and the trial date is two and a half months away. *Id.*

8

### C. *Application*

*1.* *Mari Truman*

*I.* *Inadequate warning*

In the Motion to Exclude Truman, Defendants contend that Truman is not qualified to opine on whether Defendants' warnings were adequate. Specifically, Defendants point to the fact that Truman is not a medical expert and has not shown what "qualifie[s] [her] to give opinions regarding the adequacy of warnings on complex prosthetic devices available only to a qualified learned intermediary, a surgeon." Brief in Support of the Motion to Exclude Truman (docket no. 33-1) at 16. Since Truman's affidavit contains additional qualifications to opine on warnings and Grote relies on these qualifications in his Resistance to the Motion to Exclude Truman, Defendants argue that Truman's affidavit has prejudiced them.

The court notes that Truman's affidavit contains little information regarding her qualifications that Grote did not file within the discovery deadlines. *See* Expert Report of Mari S. Truman, M.S.M.E., P.E., Appendix in Support of Motion for Summary Judgment ("Defendants' App'x") (docket nos. 30-3 and 31) at 215-16, 257-58, 268-70; Affidavit of Mari S. Truman, Grote's App'x at 431-36. Perhaps the most disputed statement in the affidavit is Truman's contention in paragraph 67 that she is qualified to opine on how a surgeon may respond to a warning. In that paragraph, Truman stated:

> In my experience working with surgeons, if surgeons are told specifically that a product does not have sufficient strength for a specific weight or for patients doing a specific set of higher demand activities, they will generally seek out a product that does have sufficient strength for patients with those requirements. If surgeons are not told of strength limitations of a device in specific terms, they have no reason to select an alternative, especially when the new device is "claimed" to be "the same" as a device with 15+ years free of fractures in clinical use.

9

Affidavit of Mari Truman, Grote's App'x at 433.

Since Grote did not disclose the information in Truman's initial expert report and did not supplement the report in a timely fashion, in violation of Rule 26(a)(2)(B),[2] the court must inquire as to whether Grote's failure was substantially justified or harmless. If the failure is substantially justified or harmless, the court may not impose Rule 37(c) sanctions.

In her affidavit, Truman claims that Defendants had previously deposed her and did not challenge her qualifications to opine on warnings. Specifically, she states that her "training and experience in the field of warnings and labeling were never questioned." *Id.* at 432. However, just because Defendants did not challenge Truman's qualifications in a prior proceeding does not foreclose them from challenging Truman's qualifications in this proceeding. Therefore, Grote's argument that his failure to disclose some of Truman's qualifications is substantially justified fails.

Furthermore, Grote's failure to disclose this information was not harmless. Defendants expended time and money in the Motion to Exclude Truman making an argument that Defendants may not have made had Grote included paragraph 67 of the Affidavit of Mari Truman in the initial or supplemental expert report. In addition, if Truman would have made the above statement in the initial or supplemental expert reports,

---

[2] Although ordinarily a party must supplement its expert disclosures at the time of pretrial disclosures in accordance with Rule 26(a)(3)(B), in this case, the court had a discovery deadline of June 7, 2013, at which point all discovery was to cease. *See* April 29, 2013 Order Extending Deadlines (docket no. 23) at 1. The reason the court imposes discovery deadlines is so all discoverable information is available to the parties prior to the dispositive motions deadline. Allowing a party to supplement its expert reports after the discovery deadline, without recourse, would be unfair to the opposing party and create an undue burden on the court.

Defendants may have deposed Truman to question her on her experience working with surgeons and her belief that surgeons rely on warnings.[3]

Given the factual context of this late affidavit, including the prior dealings between the parties and their statements that they did not need to depose each others' expert witnesses, the court does not find it appropriate to strike Truman's statements made in the Affidavit of Mari Truman that support her qualifications to give an opinion regarding inadequate warnings. Therefore, the court will consider the information in the Affidavit of Mari Truman when ruling upon the *Daubert* Motions and Motion for Summary Judgment.

However, the court finds that Grote should have provided this information earlier and the failure to do so was not substantially justified or harmless. Therefore, the court will entertain a motion for reasonable expenses, including attorney's fees, pursuant to Rule 37(c)(1)(A), should Defendants choose to file one. These expenses, if awarded, will be limited to the extent that Defendants expended resources making arguments in the *Daubert* Motions or Motion for Summary Judgment that Defendants would not have made had Grote properly disclosed Truman's additional opinions or facts, or qualifications to give such opinions or facts, regarding the adequacy of the warning that she included in her affidavit.

Moreover, the court finds that Defendants have demonstrated the "good cause" necessary to modify the discovery schedule. *See* Fed. R. Civ. P. 16(b)(4). Accordingly, Defendants may telephonically depose Truman with respect to the new information she

---

[3] Grote's claim that Defendants are not prejudiced if there is no deposition because Defendants will have ample time to prepare for cross-examination of Grote's experts at trial is without merit. One of the purposes of discovery is to prevent unfair surprise at trial. For example, it would be unfair to the Defendants if they could only question Truman's qualifications to opine on warnings in front of the jury when they have no way to know how Truman may respond.

provided in her affidavit relating to the adequacy of the warning and her qualifications to give such opinion. Defendants are not entitled to an in-person deposition unless Grote consents.

### ii. *Alternative design*

Defendants next argue that Truman provided a "litany" of new facts and opinions in her affidavit regarding the feasibility of cobalt chromium as an alternative design. Brief in Support of Motion at 6. Defendants assert that they were prejudiced because Defendants made arguments in their Motion for Summary Judgment relying on the absence of Truman's newly disclosed facts and opinions.

The court finds that Grote disclosed for the first time certain facts and opinions relating to the feasibility of cobalt chromium as an alternative design in the Affidavit of Mari Truman filed after the discovery deadline. In fact, Grote relies on these facts and opinions in his Resistance to the Motion for Summary Judgment. *See* Brief in Support of the Resistance to the Motion for Summary Judgment (docket no. 47) at 17-19.

Since Grote did not disclose these expert reports initially or timely supplement his expert reports and his failure to do so is not substantially justified or harmless, the court has discretion to impose sanctions pursuant to Rule 37(c). Although the court will not strike the untimely information included in the affidavit given the factual circumstances of this litigation, the court will entertain a motion for reasonable expenses, including attorney's fees, pursuant to Rule 37(c)(1)(A), should Defendants choose to file one. These expenses, if awarded, will be limited to the extent that Defendants expended resources making arguments in the *Daubert* Motions or Motion for Summary Judgment that Defendants would not have made had Grote properly disclosed Truman's additional opinions or facts regarding the feasibility of an alternative design that she included in her affidavit.

12

Moreover, since Defendants have demonstrated the requisite "good cause," Defendants may telephonically depose Truman with respect to the new information she provided in the affidavit regarding the feasibility of cobalt chromium as an alternative design. Defendants are not entitled to an in-person deposition unless Grote consents.

### 2. *Fredrick Hetzel*

Similar to Truman's affidavit with regard to the cobalt chromium, Hetzel's affidavit also discloses new information upon which he bases his belief that there is a feasible alternative design. In fact, Grote relies on this information in his Brief in Support of the Resistance to the Motion for Summary Judgment. *See* Brief in Resistance to Motion for Summary Judgment at 22-23. The court finds that Grote's failure to disclose this information was not substantially justified or harmless for the reasons discussed above. Although the court will not strike the information in the affidavit, the court will entertain a motion for reasonable expenses, including attorney's fees, pursuant to Rule 37(c)(1)(A), should Defendants choose to file one. These expenses, if awarded, will be limited to the extent that Defendants expended resources making arguments in the *Daubert* Motions or Motion for Summary Judgment that Defendants would not have made had Grote properly disclosed all of Hetzel's additional opinions or facts regarding the feasibility of an alternative design that he included in his affidavit.

Moreover, since Defendants have demonstrated the requisite "good cause," Defendants may conduct a telephonic deposition of Hetzel with respect to the additional information he disclosed in his affidavit regarding the feasibility of his proposed alternative design. Defendants are not entitled to an in-person deposition unless Grote consents.

### 3. *Dr. B. Sonny Bal*

As with Truman and Hetzel, Dr. Bal's affidavit discloses new information that was not specifically identified in his initial expert report. *See* Expert Report of B. Sonny Bal, M.D. (docket no. 32-2) at 5-9. For example, Dr. Bal indicates in his affidavit that he is

familiar with Wright Medical products because he "currently implant[s] [Defendants'] products, and therefore [has] firsthand familiarity with them." Affidavit of B. Sonny Bal, M.D., Grote's App'x at 437. In the affidavit, Dr. Bal also relies on the absence of other potential causes of Grote's injury in Grote's medical record—for example, failure of the bone or supporting tissue—to support his opinion that a defect in the hip implant caused the fracture. *See id.* at 438. None of this information was included in Dr. Bal's initial report.

The court finds that the additional information in Dr. Bal's affidavit constitutes an untimely supplement that was not substantially justified or harmless for the reasons discussed above. In fact, Grote relies on this information in his Brief in Support of the Resistance to the Motion to Exclude Dr. Bal. *See* Brief in Support of the Resistance to the Motion to Exclude Dr. Bal (docket no. 43-1) at 16-17. Although the court will not strike the information in the affidavit, the court will entertain a motion for reasonable expenses, including attorney's fees, pursuant to Rule 37(c)(1)(A), should Defendants choose to file one. These expenses, if awarded, will be limited to the extent that Defendants expended resources making arguments in the *Daubert* Motions or Motion for Summary Judgment that Defendants would not have made had Grote properly disclosed all of Dr. Bal's additional opinions or facts regarding his familiarity with Defendants' products and the cause of Grote's injury.

Moreover, since Defendants have demonstrated the requisite "good cause," Defendants may conduct a telephonic deposition of Dr. Bal with respect to the new information he disclosed in his affidavit regarding his familiarity with Wright Medical products and his conclusion, due in part to his investigation of Grote's medical records, that a defect in the hip implant caused the fracture. Defendants are not entitled to an in-person deposition unless Grote consents.

14

## VI.  CONCLUSION

In light of the foregoing, the Motion (docket no. 53) is **DENIED** in part and **GRANTED** in part.  The court will entertain a motion on behalf of Defendants for reasonable expenses, including attorneys fees, should Defendants choose to file one.  In addition, the court **ORDERS** that Grote make his experts—Dr. Bal, Fredrick and Truman—available for telephonic deposition.  The depositions, if still desired, shall be conducted on or before **September 13, 2013.**  The court once again notes that Defendants must strictly limit the depositions to the new information disclosed in the July 18, 2013 affidavits.

**IT IS SO ORDERED**.

**DATED** this 30th day of August, 2013.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA